IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JAMES DALTON SMITH, #02097680 § | | |
| § | | |
| VS. § | | CIVIL ACTION NO. 4:21cv661 |
| § | | |
| DIRECTOR, TDCJ-CID § | | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

*Pro se* Petitioner James Dalton Smith, an inmate confined in the Texas prison system, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was referred to United States Magistrate Judge Aileen Goldman Durrett for findings of fact, conclusions of law, and recommendations for the disposition of the case pursuant to 28 U.S.C. § 636, and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge.

**I.  PROCEDURAL BACKGROUND**

Petitioner is challenging his Collin County convictions, Cause No. 401-82195-2015. On October 14, 2016, a jury found Petitioner guilty of one count of continuous sexual abuse of a child younger than fourteen and two counts of indecency with a child by sexual contact. (Dkt. #6-36, pp. 40-46). The jury assessed Petitioner's punishment at thirty years' confinement on the continuous sexual abuse count and four years' confinement on each indecency count, and the trial court ordered the sentences to run concurrently. (Dkt. #6-36, pp. 40, 43).

Petitioner appealed his convictions, which were affirmed on July 16, 2018. *Smith v. State*, No. 05-16-01318-CR, 2018 WL 3424388 (Tex. App. July 16, 2018). Petitioner filed a petition for discretionary review ("PDR") (Dkt. #6-11), which the Texas Court of Criminal Appeals ("TCCA") refused on November 7, 2018 (Dkt. #6-12). Petitioner filed a petition for a writ of certiorari in the

1

United States Supreme Court, which was denied on April 15, 2019. *Smith v. Texas*, 139 S. Ct. 1563, 203 L. Ed. 2d 728 (2019).

On March 26, 2020, Petitioner signed his first application for state habeas corpus relief, which was docketed on April 13, 2020. (Dkt. #6-36, pp. 84-99). On September 23, 2020, the state habeas trial court entered Findings of Fact and Conclusions of Law and recommended Petitioner's application be denied. (Dkt. #6-38, pp. 15-24). On May 26, 2021, the TCCA denied the application without written order on the findings of the state habeas trial court without a hearing and on the TCCA's independent review of the record. (Dkt. #6-27). Petitioner filed a motion to reconsider (Dkt. #6-33), which the TCCA denied on August 18, 2021 (Dkt. #6-32, p. 2).

On June 30, 2021, Petitioner signed his second application for state habeas corpus relief, which was docketed on July 7, 2021. (Dkt. #6-44, pp. 87-105). On July 27, 2021, the state habeas trial court recommended the application be dismissed as a subsequent application pursuant to Tex. Code Crim. Proc. Ann. art. 11.07 § 4(a). (Dkt. #6-45, pp. 29-30). On August 11, 2021, the TCCA dismissed the application without written order as a subsequent application pursuant to Tex. Code Crim. Proc. Ann. art. 11.07 § 4(a)-(c). (Dkt. #6-40).

Petitioner filed the instant petition (Dkt. #1) on August 18, 2021.[1] Petitioner asserts the following claims for relief:

(1) Trial counsel provided ineffective assistance by failing to challenge for cause or strike venireperson number three, Michelle Bennett ("Bennett"), who indicated she would have a difficult time presuming someone's innocence if charged with continuous sexual abuse of a child.

(2) Trial counsel provided ineffective assistance by failing to object when Bennett was seated on the jury.

---

[1] A *pro se* prisoner's habeas corpus petition is deemed filed, for the purposes of the Antiterrorism and Effective Death Penalty Act of 1996, when the prisoner delivers the papers to prison authorities for mailing. *Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998). Petitioner declared under penalty of perjury that he deposited the petition in the prison mailing system on August 18, 2021. (Dkt. #1, p. 10).

(Dkt. #1, p. 6). The Director filed a response, arguing Petitioner's claims are without merit. (Dkt. #5). Petitioner filed a reply. (Dkt. #10).

## II. FACTUAL BACKGROUND

The Fifth Court of Appeals of Texas set out a recitation of the facts as follows:

At a hearing outside the presence of the jury at appellant's trial in October 2016, the trial court conducted a hearing to determine the proper outcry witness. Laura Dueer, the thirty-one-year-old sister of the complainant, C.N.S., testified she had asked C.N.S. if appellant "had done anything inappropriately with her sexually" when C.N.S. was twelve or thirteen. C.N.S.'s "answer was no." However, on January 21, 2015, C.N.S. called Dueer and said she had "lied to [Dueer] back then" and told Dueer that appellant had done something inappropriate. Dueer could not "get any kind of specific details" from C.N.S., but C.N.S. said "it started right around her eighth birthday" and ended when she was twelve or thirteen. Dueer "picked [C.N.S.] up and took her to the police right away."

Eli Molina, a forensic interviewer at the Children's Advocacy Center of Collin County, testified he interviewed C.N.S. on January 21, 2015. In the interview, C.N.S. described detailed sexual acts that occurred with her and appellant on more than one occasion "from the time that she was nine until twelve or thirteen." C.N.S. described in detail what she felt during the assaults and described sensory details about multiple assaults. Molina testified C.N.S. said she had told her sister that she "was molested" and told "someone on the Internet" that "she had been dating," but Molina testified he was the first person eighteen years of age or older that C.N.S. had "told specific details about what touched what." Appellant objected to Molina being the outcry witness, but the trial court overruled the objection.

C.N.S., seventeen at the time of trial, testified her father, appellant, began sexually abusing her in 2008 when she was nine years old. After the first time, appellant abused her "multiple times a week." About a year after the abuse started, appellant began having sex with C.N.S. When C.N.S. was in "seventh grade and after," she was sometimes "kind of out of it" when appellant assaulted her because appellant gave her "pills" and "liquor and beer and marijuana." C.N.S. testified appellant sometimes showed her pornography, left a sex toy in her bed after assaulting her one time, and left a picture of his penis on C.N.S.'s cell phone. The abuse ended in 2012, when C.N.S. was twelve or thirteen.

E.M., seventeen years old at the time of trial, testified she was C.N.S.'s "best friend from about sixth to tenth grade." E.M. testified she frequently spent the night at C.N.S.'s house. The second time E.M. spent the night, she woke up and found appellant "standing at the foot of the bed watching while [she] was asleep." Appellant had "something up to his face," and E.M. thought "it was night vision goggles or something like that." E.M. recognized appellant, who was wearing his

3

work uniform. E.M. testified she thought that she might be imagining it, but she moved around and confirmed "it was definitely not [her] imagination." E.M. pulled the blanket over herself and waited while she continued to watch. Appellant "just stood there for a while and then eventually backed out of the room and didn't turn back around until he was out the door." E.M. testified the incident did not happen again.

Lanita Smith testified she is married to appellant's brother. On one occasion in 2014, after calling appellant to let him know she was coming over, Smith went to appellant's house and knocked on the door. Appellant "took a little while" to come to the door and, when he opened the door, appellant was wearing boxers, he had a camera around his neck, and "it looked like he had [an erection]." Smith saw C.N.S. inside on a couch. C.N.S. had her panties "down around her knees," and she was wearing a t-shirt. C.N.S. pulled up her panties and "sat up off the couch." Smith went inside and asked C.N.S. if she was okay. C.N.S. said she was "fine" and "turned around and walked off." Smith "thought it was kind of strange" and suspected "something was happening," but she did not say anything until after C.N.S. reported the abuse. At the conclusion of trial, the jury found appellant guilty of continuous sexual abuse of a child younger than fourteen and two counts of indecency with a child by sexual contact. . . .

*Smith*, No. 05-16-01318-CR, 2018 WL 3424388, at *1-2.

### III. STANDARD FOR FEDERAL HABEAS CORPUS RELIEF

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1354, 1367 (5th Cir. 1993); *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996); *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005). In the course of reviewing state proceedings, a federal court does not sit as a super state appellate court. *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

The prospect of federal courts granting habeas corpus relief to state prisoners has been further limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The

4

new provisions of § 2254(d) provide that an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) was contrary to federal law then clearly established in the holdings of the Supreme Court; (2) involved an unreasonable application of clearly established Supreme Court precedent; or (3) was based on an unreasonable determination of the facts in light of the record before the state court. *See Harrington v. Richter*, 562 U.S. 86, 97-98 (2011).

The statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts. *Renico v. Lett*, 559 U.S. 766, 773 (2010); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). Furthermore, a state court's factual findings are entitled to deference and are presumed correct unless the petitioner rebuts those findings with clear and convincing evidence. *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir. 2010); *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006); *Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001); *see also Moore*, 313 F.3d at 881 (the statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts). This deference extends not only to express findings of fact, but also to any implicit findings of the state court. *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005)).

A decision by a state court is "contrary to" the Supreme Court's clearly established law if it "applies a rule that contradicts the law set forth in" the Supreme Court's cases. *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). A federal court's review of a decision based on the "unreasonable application" test should only review the "state court's 'decision' and not the written opinion explaining that decision." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas corpus court may not issue the writ simply because that court concludes in its

5

independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, that application must be objectively unreasonable. *Id.* at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'" on the correctness of the decision. *Richter*, 562 U.S. at 87 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98; *see Johnson v. Williams*, 568 U.S. 289, 293 (2013) (holding there is a rebuttable presumption that the federal claim was adjudicated on the merits when the state court addresses some claims, but not others, in its opinion).

"In Texas writ jurisprudence, usually a denial of relief rather than a 'dismissal' of the claim by the Court of Criminal Appeals disposes of the merits of a claim." *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *see also Henderson v. Cockrell,* 333 F.3d 592, 598 (5th Cir. 2003); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other than the merits). Thus, a state application that is denied without written order by the TCCA is an adjudication on the merits. *See Singleton*, 178 F.3d at 384; *Ex parte Torres*, 943 S.W.2d at 472. Where the decision is a summary denial or affirmance, however, a "federal [habeas] court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning."[2] *Wilson v. Sellers*, 584 U.S. 122, 125 (2018).

---

[2] The Director may rebut this presumption by showing that the most recent state court's unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were argued or supported by the record that the state court reviewed. *See Wilson*, 584 U.S. at 125-26;

In addition to the standard of review imposed by the AEDPA, the petitioner must also show that any constitutional error had a "substantial and injurious effect or influence" on the verdict to be entitled to habeas relief. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The Supreme Court explained that, while the passage of the AEDPA "announced certain new conditions to [habeas] relief," it did not supersede or replace the harmless error standard announced in *Brecht*. *Brown v. Davenport*, 596 U.S. 118, 134 (2022). In other words, a habeas petitioner must also satisfy *Brecht*, even if the AEDPA applies. *See id.* ("[A] federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petition has cleared both tests.") (emphasis in original).

Additionally, federal habeas relief is foreclosed if a claim: (1) is procedurally barred as a consequence of a failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722 (1991); or (2) seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989).

Thus, the federal writ serves as a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

### IV.  ANALYSIS

**A. <u>Legal Standard for Ineffective Assistance of Counsel Claims</u>**

A petitioner who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995). Ineffective assistance of counsel claims are governed by the

---

*Wesson v. Dir., TDCJ-CID*, No. 1:19-CV-00187-H, 2022 WL 3928513, at *3 (N.D. Tex. Aug. 30, 2022), *appeal dismissed sub nom. Wesson v. Lumpkin*, No. 22-10990, 2023 WL 2881423 (5th Cir. Mar. 10, 2023).

Supreme Court's standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* provides a two-pronged standard, and the petitioner bears the burden of proving both prongs. *Id.* at 687.

Under the first *Strickland* prong, the petitioner must show counsel's performance was deficient. *Id.* To establish deficient performance, he must show "counsel's representation fell below an objective standard of reasonableness," with reasonableness examined under professional norms prevailing at the time counsel rendered assistance. *Id.* at 688. The *Strickland* court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight . . . .

*Id.* at 689 (citations omitted). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted).

Under the second prong of the *Strickland* test, the petitioner must show his attorney's deficient performance resulted in prejudice. *Id.* at 687. To satisfy the prejudice prong, the habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. An ineffective assistance of counsel claim fails if a petitioner cannot satisfy either the deficient performance or

prejudice prong; a court need not evaluate both if he makes an insufficient showing as to either. *Id.* at 697.

In addition to applying the *Strickland* two-prong test, a federal habeas court must review a state petitioner's ineffective assistance of counsel claim "through the deferential lens of [28 U.S.C.] § 2254(d)." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). Reviewing Petitioner's ineffective assistance of counsel claim through the lens of the AEDPA means that he has a higher bar to exceed in order to prevail. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). Moreover, unreasonableness under *Strickland* and under § 2254(d) are not the same. First, "[t]he *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Id.* Second, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* The court must consider not only whether the state court's determination was incorrect, but also "whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Thus, in light of the deference accorded by § 2254(d), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101.

Furthermore, a petitioner's allegations of ineffective assistance of counsel must be supported by the record. *United States v. Johnson*, 679 F.2d 54, 58-59 (5th Cir. 1982). More specifically, conclusory statements are insufficient to sustain a claim of ineffectiveness. *Sayre v.*

9

*Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001); *see also Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.").

B. **Failure to Challenge a Biased Juror**

In Claims 1 and 2, Petitioner argues that trial counsel provided ineffective assistance by failing to challenge for cause or strike Bennett, who indicated that she would have a difficult time presuming someone's innocence if charged with continuous sexual abuse of a child, and by failing to object when Bennett was seated on the jury. (Dkt. #1, p. 6).

During *voir dire*, trial counsel discussed the presumption of innocence, stating that "Petitioner sits there an innocent man" and that the jury "cannot presume the government got it right" or "the child is going to tell the truth." (Dkt. #6-21, p. 145). Trial counsel then posed the following question to the venire panel:

> I've got a sliding scale here. Okay? And the question is: It would be hard for me to presume someone's innocent with the charge of continuous sexual abuse of a child. One, is that you strongly agree. Two, you somewhat agree. Three, you somewhat disagree. Or, four, you strongly disagree.

(Dkt. #6-21, p. 145). Venireperson Bennett responded, "I agree with number one." (Dkt. #6-21, pp. 145-46). Trial counsel did not ask Bennett any follow-up questions related to this response. Trial counsel did not use a preemptory or for-cause challenge, and Bennett sat on the jury. (Dkt. #6-21, p. 172).

In his first state habeas application, Petitioner alleged trial counsel's failure to challenge, strike, or otherwise object to Bennett sitting as a juror constituted ineffective assistance of counsel. (Dkt. #6-36, pp. 89-91). Trial counsel filed an affidavit (Dkt. #6-37, pp. 65-73) in response to Petitioner's state habeas application. Trial counsel addressed Petitioner's specific claim as follows:

13. Did counsel challenge Michelle Bennett for cause?

Answer: I did not.

> A. It was a strategic decision because there were other jurors who we deemed worse for our case. In addition, if Ms. Bennett was struck it was likely that jurors more harmful to our case would be empanelled on our jury. Mr. Smith and I discussed this at the time of trial. Mr. Smith was an active participant in jury selection. No jurors were accepted or rejected without input from Mr. Smith. There were several jurors who were potentially more damaging to our case and it was decided by our side that it would have been harmful to our case to challenge Ms. Bennett.

14. Did counsel use a preemptory strike on Michelle Bennett?

Answer: No. I used all the pre-emptory strikes on worse jurors and couldn[']t get her struck for cause.

> A. It was a strategic decision because there were other jurors who we deemed worse for our case. . . . Mr. Smith and I discussed this at the time of trial. Mr. Smith was an active participant in jury selection. It was decided that it was likely that jurors who could be more injurious to our case would make the panel. No jurors were accepted or rejected without input from Mr. Smith.

15. What factored into counsel's decision not to challenge Bennett for cause?

> Answer: It was the answers and body language of the other potential jurors. It was a strategic decision because there were other jurors who we deemed worse for our case and would likely make the panel if Ms. Bennett were struck. Mr. Smith and I discussed this at the time of trial. Mr. Smith was an active participant injury selection. No jurors were accepted or rejected without input from Mr. Smith. In addition, the responses of other jurors further factored into the decisions.

16. Did Bennett have any qualities or attributes that counsel considered beneficial to applicant?

> Answer: Counsel felt as though she could rule based on the facts of the case. It was a strategic decision because there were other jurors who we deemed worse for our case. Mr. Smith and I discussed this at the time of trial. Mr. Smith was an active participant injury selection. No jurors were accepted or rejected without input from Mr. Smith.

17. Did Counsel ask Bennett a sliding -scale question? Yes

> a. If so, . . . what was the question and her response?

11

>   Answer: The question was "it would be hard to me to presume someone's innocent with the charge of continuous sexual abuse of a child". "One is your strongly agree. Two that you somewhat agree. Three you somewhat disagree. Or, Four, you strongly disagree." This was a question . . . not only designed for the response but also to get the jury talking. To get jurors to feel comfortable that this was a difficult case with difficult feelings and emotions.
>
>   b. Was the later confusion regarding the question? [sic]
>
>   Answer: Yes there was some confusion mainly because there was a power point going on and the slides that had gotten out of sync.
>
>   [c]. What was counsel's statement to the panel regarding the confusion?
>
>   Answer: I cannot recall what the statement was. The confusion was due to a power point presentation going on where the slides did not match the question and at some point the power point was stopped.

(Dkt. #6-37, pp. 68-71).

The state habeas trial court found trial counsel and his affidavit credible. (Dkt. #6-38, p. 15, ¶¶ 1-2). After setting forth the *Strickland* standards (Dkt. #6-38, p. 15, ¶ 3), the state habeas trial court made the following findings and conclusions relevant to Petitioner's claim that trial counsel was ineffective because he did not challenge for cause or use a preemptory strike on venireperson Bennett:

>   10. Applicant was an active participant in the jury selection and no venire members were accepted or rejected without his input;
>
>   11. Counsel did not challenge Bennett for cause or use a preemptory strike against her because there were other venire members that he deemed far worse for the case and if Bennett were removed for cause or struck, it was likely that those venire members would make it on the jury;
>
>   12. Counsel believed that Bennett could rule based on the facts of the case;
>
>   13. Counsel discussed this with Applicant;
>
>   14. Counsel had a valid legal strategy for not challenging Bennett for cause or using a preemptory strike on Bennett;

15. Applicant has failed to meet his burden of proof by a preponderance of the evidence that counsel's strategy for not challenging Bennett for cause or using a preemptory strike on her was deficient;

16. Applicant has failed to prove by a preponderance of the evidence that the outcome of trial would have been different had counsel challenged Bennett for cause or used a preemptory strike on her;

17. Applicant argues that counsel was ineffective because he did not further question Bennett when she gave what he calls an "obviously biased" response to counsel's sliding scale question;

18. During voir dire, counsel asked: "I've got a sliding scale here. Okay? And the question is: It would be hard for me to presume someone's innocent with the charge of continuous sexual abuse of a child. One, is that you strongly agree. Two, you somewhat agree. Three, you somewhat disagree. Or, four, you strongly disagree." 4 RR 145;

19. Bennett responded to the question, "I agree with number one." 4 RR 145;

20. Counsel did not ask any follow-up questions;

21. Counsel looked at the answers and body language of other venire members and still decided that Bennett would be a better juror than others on the panel;

22. Counsel felt as if Bennett could rule based on the facts of the case;

23. Counsel discussed this with Applicant, who had an active role in jury selection, and no jurors were accepted or rejected without input from Applicant;

24. It appears that during voir dire, there was confusion over what PowerPoint slide was being shown and the slides did not match the question. 4 RR 152-53;

25. It is not clear at what point the slide and question became out of sync;

26. The PowerPoint presentation was ended and counsel stated that he was not going to hold anyone to any question that was not clear. 4 RR 152;

27. It is possible that counsel discounted Bennett's answer because he was in the position to know if her response occurred while there was confusion over the question being answered;

28. Trial counsel believed that Bennett was a good potential juror and that there were other potential jurors who were not good for the defense that could be on the

13

> jury panel if Bennett was removed, and Applicant agreed with this assessment at trial;
>
> 29. Applicant has not shown by a preponderance of the evidence that trial counsel's strategy regarding Bennett was deficient;
>
> 30. Applicant has not shown by a preponderance of the evidence that the outcome of trial would have been different if counsel would have further questioned Bennett[.]

(Dkt. #6-38, pp. 16-19). The TCCA subsequently denied relief without a written order based on the findings of the state habeas trial court without a hearing and on the TCCA's independent review of the record.

Counsel's actions during *voir dire* are considered to be a matter of trial strategy. *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995). "A decision regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be 'so ill chosen that it permeates the entire trial with obvious unfairness.'" *Id.* (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)).

In conducting the deficient performance analysis in the context of counsel's failure to strike an allegedly partial juror, a court first evaluates whether the juror at issue was actually biased. *See Virgil v. Dretke*, 446 F.3d 598, 608-10 (5th Cir. 2006). The bias determination centers on a juror's own indication that he or she has "such fixed opinions that [he or she] could not judge impartially [the petitioner's] guilt," *Patton v. Yount*, 467 U.S. 1025, 1035 (1984), and whether his or her "views would prevent or substantially impair the performance of his or her duties as a juror in accordance with his or her instructions and oath," *United States v. Scott*, 159 F.3d 916, 925-26 (5th Cir. 1998). The issue of juror bias is a factual finding. *Virgil*, 446 F.3d at 610 n.52 (citing *Patton*, 467 U.S. 1025). Because the question of whether jurors have opinions that disqualify them is "one of historical fact," *Patton*, 467 U.S. at 1037, under AEDPA standards this court may reject the

14

state court's implicit finding only if Petitioner rebuts the presumption of correctness given to the state court factual findings "by clear and convincing standards," 28 U.S.C. § 2254(e)(1). *Seigfried v. Greer*, 372 F. App'x 536, 539 (5th Cir. 2010).

In this case, trial counsel showed the venire members a "sliding scale" of one to four, with one being strong agreement with the statement that it would be "hard" to presume innocence based on the charge of continuous sexual abuse of a child, and with four being strong disagreement with that statement. (Dkt. #6-21, p. 145). Venireperson Bennett responded, "I agree with number one." (Dkt. #6-21, pp. 145-46). Her answer "is, at its heart, an honest answer." *Virgil*, 446 F.3d at 609. "[T]he Supreme Court has never required that jurors come ready to serve with a blank slate, without preconception or understanding of the real world." *Id.* As the Supreme Court noted in *Irvin v. Dowd*, 366 U.S. 717 (1961):

> To hold that the mere existence of any preconceived notion as to guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Id.* at 723; *see also Delaware v. Van Arsdall,* 475 U.S. 673, 681 (1986) ("[T]he Constitution entitles a criminal defendant to a fair trial, not a perfect one."). Furthermore, as the Supreme Court noted in *Patton*, ambiguous testimony "is not unusual on voir dire examination." 467 U.S. at 1039. The Supreme Court explained:

> It is well to remember that the lay persons on the panel may never have been subjected to the type of leading questions and cross-examination tactics that frequently are employed, and that were evident in this case. Prospective jurors represent a cross section of the community, and their education and experience vary widely. Also, unlike witnesses, prospective jurors have had no briefing by lawyers prior to taking the stand. Jurors thus cannot be expected invariably to express themselves carefully or even consistently.

*Id.*

Although Bennett's response hinted at possible bias against Petitioner, Bennett never explicitly stated that she could not be an impartial juror. *See Seigfried*, 372 F. App'x at 540. Specifically, she did not unequivocally state that she could not, or would not, presume innocence in this case. Furthermore, other portions of the *voir dire* transcript reflect that Bennett could presume Petitioner's innocence and render a verdict based on the facts of the case. During the State's *voir dire*, Bennett agreed she could "wait" until the State had "put on the evidence and proven" that Petitioner had "committed the crime in question before she pass[ed] judgment on him." (Dkt. #6-21, p. 29). In addition, Bennett did not answer in the affirmative when asked whether anyone on the jury panel had an inability to follow the law on a defendant's Fifth Amendment right not to testify and to not presume Petitioner's guilt if he did not testify. (Dkt. #6-21, pp. 90, 94-98). Bennett's entire *voir dire* testimony does not demonstrate that she was biased against Petitioner and was unable to set aside any opinion and return a verdict based only on the evidence presented at trial. Notably, the trial court kept its own list of venire members that needed to be struck for cause, and Bennett was not among them. (Dkt. #6-21, pp. 167-72). *See Uttecht v. Brown*, 551 U.S. 1, 9 (2007) ("Deference to the trial court is appropriate because it is in a position to assess the demeanor of the venire, and of the individuals who compose it, a factor of critical importance in assessing the attitude and qualifications of potential jurors.").

Continuing with the deficient performance analysis, the court next evaluates whether trial counsel's failure to challenge venireperson Bennett was justified by trial strategy. As explained in trial counsel's affidavit and as found by the state court: Petitioner actively participated in jury selection; trial counsel consulted with Petitioner before accepting or rejecting any juror; trial counsel reasonably believed Bennett would be a better juror than other members on the panel; and trial counsel discussed with Petitioner his belief that Bennett would be able to make a decision on

16

the evidence presented. Petitioner has failed to rebut these findings with clear and convincing evidence. The record thus shows that Petitioner acquiesced to what appears to have been the sound advice of trial counsel in not challenging Bennett as a juror. The state court's determination that trial counsel did not render ineffective assistance under *Strickland* by failing to strike, challenge, or object to Bennett as a juror did not result in a decision that was contrary to, or an unreasonable application of, clearly established federal law. Therefore, Petitioner's claims that trial counsel rendered ineffective assistance during jury selection are without merit and should be denied.

## V. CONCLUSION

Petitioner has failed to show his claims have merit. Petitioner has failed to demonstrate trial counsel rendered ineffective assistance under *Strickland* during jury selection. Above all, Petitioner has failed to show the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *Williams*, 529 U.S. at 402-03, 405-06; *Childress v. Johnson*, 103 F.3d 1221, 1224-25 (5th Cir. 1997). Petitioner has failed to show there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98. Accordingly, Petitioner's habeas petition should be denied and dismissed with prejudice.

## VI. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Court of Appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). Although Petitioner has not yet filed a notice of appeal, it is respectfully recommended that the court, nonetheless, address whether Petitioner would be entitled to a

certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (holding that a district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court," noting that "[f]urther briefing and argument on the very issues the court has just ruled on would be repetitious").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a substantial showing of the denial of a constitutional right in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). When a district court denies a motion on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, it is respectfully recommended that reasonable jurists could not debate the dismissal and denial of Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is respectfully recommended the court find that Petitioner is not entitled to a certificate of appealability.

## VII. RECOMMENDATION

It is recommended the above-styled petition filed under 28 U.S.C. § 2254 be denied and the case be dismissed with prejudice. It is further recommended a certificate of appealability be denied.

Within fourteen days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 8th day of August, 2024.**

AILEEN GOLDMAN DURRETT
UNITED STATES MAGISTRATE JUDGE